## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

**MONICA GILLMAN,**

      **Plaintiff,**

**v.**　　　　　　　　　　　　　　　　　　　**CASE NO. 3:13cv61-MCR/EMT**

**OKALOOSA COUNTY FLORIDA,**

      **Defendant.**

_____/

## ORDER

After sustaining an on-the-job-injury and being terminated from her employment, Plaintiff Monica Gillman brought suit against her former employer, Okaloosa County, Florida ("County"), alleging interference with her rights under the Family and Medical Leave Act ("FMLA"), *see* 29 U.S.C. § 2601, *et seq*., as well as retaliation for exercising her FMLA and state law workers' compensation rights, *see* Fla. Stat. § 440.205.  Pending before the Court is the County's Motion for Summary Judgment (Doc. 33).  Having fully considered the arguments of the parties and the record, the Court finds that the motion is due to be granted.

**BACKGROUND**

The facts as set forth below are largely undisputed.[1]  Plaintiff Monica Gillman was employed as a correctional officer in Okaloosa County's jail facility from May 2004 until she was terminated in February 2012.  As a correctional officer, her duties included supervising inmates, inspecting cells, conducting inmate searches, and transporting inmates.  These duties often required Gillman to lift heavy objects (in excess of 100 pounds), to use her hands and thumbs, and involved close interaction with inmates, all of which required physical strength.

On April 2, 2011, Gillman sustained an on-the-job injury when her right hand became lodged in a hydraulic door.  Gillman was transported to the hospital, where she was treated

---

[1]  While the facts set forth in this order are largely undisputed, the inferences that may be drawn from those facts are disputed and must be drawn in favor of the Plaintiff for purposes of this motion.

for a crush injury to her right thumb.  As a result of her injury, Gillman was unable to perform many of the basic functions of her job, including tasks that required hand and finger manipulation.  The day after her injury, Gillman was medically cleared to work only "light duty" with limited use of her right hand.  Gillman's workers' compensation medical treatment report dated April 6, 2011, stated she was restricted to "no lifting, pushing or pulling with right hand until cleared by orthopedics." (Doc. 36-6, at 3).  Gillman was placed on workers' compensation and concurrent FMLA leave.  Gillman remained on leave until May 4, 2011, when she returned to work full time.[2]  Gillman worked full time until she was scheduled for surgery on August 23, 2011.  She then took concurrent FMLA leave and workers' compensation benefits.  Six weeks after surgery, she was medically released to work "light duty."  The record shows that after this, that Gillman requested to return to light duty on more than one occasion and each time was told there was no light duty position available, based on the determination of  the County's Jail Chief, Paul Lawson, so she remained on FMLA leave.  On February 14, 2012, the County was notified that Gillman was scheduled for another surgery and was being placed on a "no work" status.  Gillman underwent a second surgery in February 2012, and did not provide any expected timeframe for when she would be medically cleared to return to full-time work.

The term "light duty" is used by Gillman to refer to "an employee [who] is working at less than full capacity." (Doc. 39, at 1.)  The County presented evidence through several employees that it does not have, and never has had, a "light duty" policy for its employees, nor does it have a "light duty" correctional officer position.  Instead, light duty may be permitted on a case-by-case basis when possible operationally, based on whether it is available given the demands and requirements of individual departments and whether the officer is capable of performing the duties in light of the medical restrictions.  The record indicates that "there is a practice of providing light duty when and where possible operationally" (doc. 34-5, at 3), but not a policy requiring it.  Lawson said a correctional officer might be assigned office work as light duty where a position was vacant.  Thus, the County has from time to time employed correctional officers in capacities that are less

---

[2]  There is no indication in the record that she attempted to return to work prior to that time or requested light duty.

physically demanding than the standard correctional officer position, but not all employees who request light duty work are granted the request, and no official policy requires it.  Also, under the County's Leave Policy, "[a]t the end of six (6) months continued lost time for an on-the-job injury, annual and sick leave accrual will cease," at which time "[t]he affected department may refill the position."

By February 20, 2012, Gillman had used approximately 180 days of continuous FMLA leave, and citing its Leave Policy, the County terminated Gillman's employment at its earliest opportunity under the Policy.[3]  According to the County, it chose to terminate and replace Gillman because she "could not perform [her] full job duties," and because the County had been given no indication regarding if, or when, Gillman would be able to return to work.  Jail Chief Lawson informed Gillman that she could re-apply to Okaloosa County once she obtained a full recovery, and he encouraged her to do so.  At the time of her termination, Gillman did not inquire about any accommodations, did not request a light duty assignment, and did not file a complaint of any kind.  Moreover, she did not inquire about the possibility of taking a leave of absence, which, if available, would have allowed her to remain employed beyond her termination date.[4]

In September 2012, approximately seven months after her termination, Gillman re-applied for her original position as Correctional Officer I with Okaloosa County.  In October 2012, Gillman received a doctor's note clearing her for full duty work and provided the note to the County. This was the first time she had been cleared to work full time since August 2011. On November 16, 2012, the County extended Gillman an offer of employment for a correctional officer position ("Correctional Officer I").  This was the same correctional officer position Gillman had held prior to her injury, but it was at the entry level, which was at a lower rate of pay than what Gillman had earned on the date she was terminated.  Although

---

[3]  Gillman was notified of her termination by a telephone call from Lawson, and she also received a termination letter dated February 23, 2012.

[4]   In her affidavit, Gillman claims she was never offered a leave of absence.  For purposes of summary judgment, the Court assumes this fact as true.  The Court notes, however, that Lieutenant Robert Boutwell, Gillman's direct supervisor, testified that he spoke with Gillman about taking a leave of absence and said she could have requested one.  As to whether Gillman would have been granted a leave of absence had she requested one, the only evidence before the Court is that the County had previously granted a leave of absence to another injured employee, which suggests that this may have been an option for Gillman had she made such a request.  *See* Doc. 34-7, at 4.

the record is unclear as to whether Gillman initially accepted the County's offer, the evidence is undisputed that she eventually turned down the opportunity and accepted an offer with Walton County instead.

Gillman then filed suit, alleging the County interfered with her FMLA rights and retaliated against her, in violation of FMLA and workers' compensation rights by not permitting her to work a light duty position intermittently, so she would not have exhausted her FMLA leave.  The County moves for summary judgment.

**SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "The moving party bears the initial burden of informing the court of the basis for its motion and of identifying those materials that demonstrate the absence of a genuine issue of material fact." *Rice-Lamar v. City of Ft. Lauderdale*, 232 F.3d 836, 840 (11th Cir. 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  A fact is "material" if it might affect the outcome of the case under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party. *Id.*

All the evidence and factual inferences reasonably drawn from the evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  Once a party demonstrates the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 323-24. Plaintiff's evidence must be significantly probative to support the claims. *Anderson*, 477 U.S. at 249.  A mere scintilla of evidence in support of the nonmoving party's position will not suffice to demonstrate a genuine issue of material fact. *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990).  Moreover, "the nonmoving party cannot create a genuine issue of material fact through speculation, conjecture, or evidence that is 'merely colorable' or 'not significantly probative.'" *Vega v. Invsco Group, Ltd.*, 432 F. App'x 867, 869-70 (11th

Cir. 2011) (quoting *Anderson*, 477 U.S. at 249-50).

**DISCUSSION**

"The FMLA grants an eligible employee the right to take up to 12 workweeks of unpaid leave annually for any one or more of several reasons, including because of a serious health condition that makes the employee unable to perform the functions of the position of such employee." *Hurley v. Kent of Naples, Inc.*, 746 F.3d 1161, 1166 (11th Cir. 2014) (internal marks omitted).  If an employer interferes with, restrains, or denies the exercise, or attempted exercise, of FMLA rights, the employee may bring a private civil action for damages or equitable relief.  *See  Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1293 (11th Cir. 2006) (citing 29 U.S.C. §§ 2615(a)(1) & 2617(a)).  The Eleventh Circuit has explained that § 2615(a) includes two types of FMLA claims:  (1) "interference claims, in which an employee asserts that his employer denied or otherwise interfered with his substantive rights under the Act," and (2) "retaliation claims, in which an employee asserts that his employer discriminated against him because he engaged in activity protected by the Act." *Id.* (internal marks omitted).  An interference claim requires "proof by a preponderance of the evidence that [the employee] was entitled to the benefit denied." *Id.* (internal marks omitted); *see also Jarvela v. Crete Carrier Corp.*, 754 F.3d 1283, 1289 (11th Cir.  2014).  "[T]he employer's motives are irrelevant" to an interference claim.  *Martin v. Brevard Cnty. Pub. Schs*., 543 F.3d 1261, 1267 (11th Cir. 2008) (internal marks omitted).

The County argues it is entitled to summary judgment on the FMLA interference claim because Gillman cannot demonstrate that she was denied a benefit to which she was entitled under the FMLA.  The Court agrees.  There is no dispute that Gillman was an eligible employee and no dispute that she in fact exercised all of her substantive FMLA leave rights without interference prior to her termination.  There is also no dispute that Gillman was not medically cleared to return to full-time work in her original position until several months after she had exhausted her FMLA leave and been terminated.  Gillman alleges interference with her FMLA rights based on the fact that the County did not place her in a light duty position when she requested it.  According to Gillman, she had been able to perform light duty work at that time but because the County refused this placement, she

was forced to use up her valuable FMLA leave which, in turn, resulted in her being terminated before her full recovery.  Gillman maintains she would not have become subject to the County's six-month continuous leave policy and termination if she had been permitted to work a light duty job and use intermittent leave when necessary.

There is no evidence that the County had full-time light duty work available at the time Gillman requested light duty, and more importantly, an employer does not have an obligation under FMLA to place an employee in a different position.  *See Diaz v. Transatlantic Bank*, 367 F. App'x 93, 96 (11th Cir. 2010); *see also* 29 C.F.R. § 825.216(c) ("If the employee is unable to perform an essential function of the position because of a physical or mental condition, including the continuation of a serious health condition or an injury or illness also covered by workers' compensation, the employee has no right to restoration to another position under the FMLA.").  Gillman relies on *Verhoff v. Time Warner Cable Inc.*, in which the court determined the employer had interfered with FMLA rights by not offering intermittent leave.  *See Verhoff v. Time Warner Cable Inc* 478 F. Supp. 2d 933, 941 (N.D. Ohio 2006) (citing 29 U.S.C. § 2612(b)(1)) (finding "[a]n eligible employee is entitled to block leave, but [s]he is also entitled to intermittent leave or a reduced leave schedule if medically necessary").  The facts of *Verhoff*, however, are distinguishable from this case.  There, the plaintiff was medically capable of performing all of his regular job duties, he was merely restricted to a forty hour work week with no overtime, and thus, under the FMLA, he was entitled to the benefit of intermittent leave or a reduced work schedule.  Here, by contrast, Gillman was not entitled to the benefit of intermittent leave because she could not perform her job.  *See Hatchett v. Philander Smith Coll.,* 251 F.3d 670, 677 (8th Cir. 2001) (stating individuals who are unable to perform their jobs are not entitled to intermittent leave).  Under the FMLA, an employee only has the right to be restored to the same or an equivalent position, and the employer has no duty to create another position for her.  *See Jarvela*, 754 F.3d at 1289; *see also Silva v. City of Hidalgo, Tx*, No. 13-41064, 2014 WL 3511685, at *3 (5th Cir. Jul. 17, 2014) (stating if an employee could not perform the essential functions of her job, she had no right to return to work and be given a transfer to a light duty position); *James v. Hyatt Regency Chicago*, 2011 WL 6156825, at * 6 n.12 (N.D. Ill. 2011) ("[T]he FMLA does not require an employer

to restore an employee to a position *different* from the one that he held before taking FMLA leave."). Thus, Gillman had the benefit of FMLA leave because she could not return to her position,[5] and there was no interference with her FMLA rights. The County therefore is entitled to summary judgment on Gillman's interference claim.

The County also seeks summary judgment on Gillman's FMLA retaliation claim. Gillman alleged she suffered FMLA retaliation when the County refused to give her light duty work and argues it terminated her employment after she exercised her FMLA rights. Because the record contains no direct evidence of a retaliatory intent, the Court evaluates Gillman's FMLA retaliation claim applying "the same burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) . . . for evaluating Title VII discrimination claims." *Strickland v. Water Works and Sewer Bd. of City of Birmingham*, 239 F.3d 1199, 1207 (11th Cir. 2001) (citing *Brungart v. BellSouth Telecomm. Inc.*, 231 F.3d 791, 798 (11th Cir. 2000)). Under that test, to state a *prima facie* case of intentional FMLA retaliation, the employee must show that: "(1) [s]he engaged in a statutorily protected activity; (2) [s]he suffered an adverse employment decision; and (3) the decision was causally related to the protected activity." *Strickland*, 239 F.3d at 1207 (citing *Parris v. Miami Herald Publ'g Co.*, 216 F.3d 1298, 1301 (11th Cir. 2000)). If the plaintiff establishes a *prima facie* case, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for the challenged action. *EEOC v. Joe's Stone Crabs, Inc.*, 296 F.3d 1265, 1272 (11th Cir. 2002). Where the employer's burden is met, the plaintiff must then "introduce significantly probative evidence showing that the asserted reason is merely a pretext for discrimination" in order to avoid summary judgment. *Brooks v. Cnty. Comm'n of Jefferson Cnty.*, 446 F.3d 1160, 1163 (11th Cir. 2006) (quotation omitted). A plaintiff may show pretext "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981) (citing *McDonnell Douglas*, 411 U.S. at 804-805).

---

[5] Also, at the time of her termination, Gillman had been scheduled for another surgery and placed on no-duty status, so she was not able to return to her job at that time either.

There is no dispute that Gillman engaged in the statutorily protected activity of taking FMLA leave, and the Court will assume for purposes of summary judgment that she suffered an adverse employment action by the County's failure to give her light duty or its decision to terminate her.  Also, the causal connection is sufficiently demonstrated by the temporal proximity between Gillman's use of FMLA leave and both the denial of her request for light duty work and her termination.  *See Schaf v. Smithkline Beecham Corp.*, 602 F.3d 1236, 1243 (11th Cir. 2010) (stating causation can be reasonably inferred from close temporal proximity between the protected action and the adverse employment action).  Therefore, the Court will assume Gillman is able to show a *prima facie* case of FMLA retaliation.   The burden then shifted to the County to demonstrate a legitimate nonretaliatory explanation for the adverse action.  As to Gillman's termination, the County asserts Gillman was properly terminated pursuant to its ordinary policy after she had used all FMLA leave to which she was entitled and still was physically unable to return to work.  The County did not deviate from that undisputed policy here, which undercuts any suggestion that the termination was based on retaliatory animus toward Gillman.  *See Silva*, 2014 WL 3511685, at *4.  Gillman has shown no pretext in the reason for her termination.

Gillman's claim of FMLA retaliation based on the refusal to place her on light duty status also fails.  The County offered the legitimate explanation that it has no policy allowing light duty, no designated light duty job for a correctional officer, and no light duty job was available when Gillman requested it.  While some duties a correctional officer performs are considered light, the decision to allow this type of work is fact specific, depending on needs of the department at the time, availability of the work, and the medical restrictions involved.  The decision is left to individual supervisors.  The undisputed record shows that whenever Gillman requested light duty, there was no available position that could be considered light duty, and Gillman presented no evidence to the contrary.  Moreover, she was not entitled to it under any County policy or the FMLA; it is undisputed she was is physically unable to return to her position.  *See Silva*, 2014 WL 2511685, at *4.

Gillman attempts to show pretext by referencing three comparators who were given

light duty and had not used FMLA leave – a pregnant employee,[6] an obese employee, and an employee who had been injured in a motorcycle accident.  A plaintiff may show pretext by demonstrating that other similarly situated employees outside the protected class were treated more favorably.  *See generally Silvera v. Orange County Sch. Bd.*, 244 F.3d 1253, 1259 (11th Cir. 2001) (concluding in a Title VII case that plaintiff's comparator evidence did not support a showing of pretext because the comparator was not "similarly situated"); *Ebersole v. Novo Nordisk, Inc.*, 758 F.3d 917, 925-26 (8th Cir. 2014) (discussing use of comparators to show pretext in FMLA retaliation context).  Any comparators must be "similarly situated in all relevant aspects."  *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir.1997).  However, different treatment by a different supervisor or decision maker is seldom the basis for a viable retaliation claim.  *See Silvera*, 244 F.3d at 1261 n.5.  Here, while the alleged comparators were correctional officers similar to Gillman, the fact that they were permitted to work light duty positions under various circumstances in the past does not render the County's statement that no light duty positions were available at the time of Gillman's requests unworthy of credence.  Even considering that one of the comparators was on light duty when Gillman requested it does not suggest that another position was also available.  Moreover, Gillman's mere subjective belief that she was retaliated against is not by itself sufficient to survive summary judgment.  *See Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1332-33 (11th Cir. 1998) (indicating that an employee's own evaluation and opinion is insufficient to establish pretext).

For similar reasons, Gillman's claim of workers compensation retaliation under Florida law also fails.  *See* Fla. Stat. § 440.205 ("No employer shall discharge, threaten to discharge, intimidate, or coerce any employee by reason of such employee's valid claim for compensation or attempt to claim compensation under the Workers' Compensation

---

[6]  The pregnant employee referenced in this lawsuit is Kimberly Boddy.  In her deposition, Ms. Boddy testified that she was not assigned to what is described as "light duty" work.  Rather, she was given work that was designed "to protect [her]self and [her] child," including assignments in towers or central control.  Doc. 34-3, at 2.  According to Boddy, her work assignment was not "light duty" because she "could have done everything [she] should have done" as a correctional officer if called upon to do so, including fighting inmates.  Doc. 34-3, at 2.  Moreover, while Gillman testified that she knew of an additional pregnant officer who was assigned to a tower position, she failed to provide any information regarding that officer.  *See* Doc. 36-59, Dep. of Monica Gillman, at 19.

Law.").  Using the same framework of analysis as set forth above,[7] the Court finds that Gillman cannot demonstrate causation for a *prima facie* case with regard to her termination because her workers' compensation claim, made over ten months before her termination, cannot be said to have been in close temporal proximity with her termination.  *See Perich v. Climatrol, Inc.*, 523 So. 2d 684, 686 (Fla. 3d DCA 1988) (affirming summary judgment in favor of employer on a Florida workers' compensation retaliation claim where the plaintiff was employed for over a year after his injury and still could not return to work on a full duty basis fourteen months after the injury).  As to the light duty retaliation claim, even assuming Gillman can establish a *prima facie* case, as with her FMLA retaliation claim, she has not presented sufficient evidence of pretext for the same reasons set forth above.  Therefore, the County is entitled to summary judgment.

Accordingly, it is ORDERED:

1.  Defendant Okaloosa County's Motion for Summary Judgment (Doc. 33) is **GRANTED**.  The Clerk is directed to enter final summary judgment in favor of Defendant and against Plaintiff.

2  Defendant's Motion for Leave to File A Reply (Doc. 40) is **DENIED** as moot.

3.  Defendant's Motion To Strike Plaintiff's Summary Judgment Affidavits (Doc. 42) is **DENIED** as moot, because even considering the affidavits does not change the Court's decision.

4.  Defendant's Motion to Demand Return and to Strike Privileged and Inadvertently Produced Documents (doc. 41) is **DENIED in part** as to the motion to strike, because even considering the documents, the Court's decision does not change, and **GRANTED in part** as to the request to return documents.  Plaintiff shall return the documents at issue within five (5) days of the date of this Order.

---

[7]  When analyzing a claim of workers' compensation retaliation under Florida law, the Court applies the same framework of analysis as is applicable under the FMLA or Title VII.  *See Coker v. Morris*, 2008 WL 2856699, No. 3:07cv151, at 6 (N.D. Fla. July 22, 2008) (unreported) ("[A plaintiff's] workers' compensation retaliation claim is analyzed under the same framework as a federal retaliation claim under Title VII."); *see also Humphrey v. Sears, Roebuck & Co.*, 192 F.Supp. 2d 1371, 1374 (S.D. Fla. 2002).

5.      The Clerk is directed to tax costs against the Plaintiff, and close the file.

**DONE and ORDERED** this 30th day of September, 2014.

*M. Casey Rodgers*

**M. CASEY RODGERS**
**CHIEF UNITED STATES DISTRICT JUDGE**